IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEW ERA TRANSMISSION REPAIR & WHOLESALE, INC., NEW ERA PROPERTY, LLC, and EVELYN SANDOVAL, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL O'LEARY, JOSEPH MARANOWICZ, MIKE CRANDALL, JEFF BLY, BARBARA FOREST-BERISO, and the VILLAGE OF ADDISON, <br><br> Defendants. | Case No. 23 C 14146 <br><br> Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Plaintiffs New Era Transmission Repair and Wholesale, Inc. ("New Era Trans"), New Era Property, LLC ("New Era Property"), and Evelyn Sandoval ("Sandoval") bring this action asserting various claims under 42 U.S.C. § 1983 and Illinois state law against the Village of Addison (the "Village"), its employees, and a neighboring property owner. Essentially, Plaintiffs challenge various ordinance violations that were issued by the Village and upheld by a reviewing state court. Defendants have moved to dismiss the complaint for lack of jurisdiction and failure to state a claim (Dkts. 32, 43). For the reasons discussed below, the motions are granted and the complaint is dismissed without prejudice.

## BACKGROUND

The allegations are taken from Plaintiffs' complaint (Dkt. 1) and treated as true for purposes of resolving the pending motions. In February 2009, the Village entered into a pre-annexation agreement with Louis Alamprese ("Louis"), the previous owner of the property located

1

at 811 East Lake Street, Addison, Illinois (the "Property"). (Compl. ¶¶ 15, 16). That agreement allowed the Property to be zoned as a B-2 Community Business District with continued non-conforming use as an auto shop until such use was abandoned for more than two years. (*Id*. ¶ 17). Further, the Property was accepted in "as-is" condition, except for six improvements and conditions that were to be met. (*Id*. ¶ 18). According to the complaint, the pre-annexation agreement applies to successive owners, and it does not expire until February 17, 2029. (*Id*.) The Property was later passed down to Louis' son, Frank Alamprese ("Frank"). (*Id*. ¶ 16).

On or around May 30, 2017, Sandoval entered into a lease for a portion of the Property and began rehabbing the building to accommodate her transmission repair business, New Era Trans. (*Id*. ¶ 19). On October 30, 2017, Sandavol attempted to apply for a business license to operate New Era Trans on the Property. (*Id*. ¶ 21). Thereafter, Sandoval became subject to an inspection report that identified 13 items that needed to be improved. (*Id*.) Plaintiffs contend that some of those items were outside of the building that Sandoval was renting. (*Id*.)

On December 31, 2020, the Village cited Sandoval's husband, Fernando Sandoval ("Fernando"), for ordinance violations. (*Id*. ¶ 26). Then, on March 24, 2021, the Village sent a notice of exterior violations to Sandoval and Frank, the owner of the property. (*Id*. ¶ 27). Fernando was summonsed to an administrative hearing on July 14, 2021. (*Id*. ¶ 28). Additionally, Sandoval was summonsed to several administrative hearings, including on October 13, 2021, October 25, 2021, and November 20, 2021. (*Id*. ¶ 29-31). Subsequently, Dominick Lanzito ("Lanzito"),[1] the Village's Administrative Adjudication Hearing Officer, found that Sandoval was liable for multiple ordinance violations and required her to pay several fines. (*Id*. ¶ 32). Plaintiffs contend

---

[1] Pursuant to the parties' Joint Stipulation to Dismiss with Prejudice [60], Dominick Lanzito is no longer a defendant in this action.

2

that these findings were somehow in violation of the Village's own ordinance. (*Id*.) Furthermore, Plaintiffs allege that no inspection report, request for improvement, or ordinance violation were ever issued against Louis, Frank, or any of the other tenants on the Property. (*Id*. ¶ 22-24).

Plaintiffs further allege that, at some point, Sandoval discovered that Defendant Michael O'Leary ("O'Leary), Village Code Enforcement Officer, was collaborating with and taking complaints from Defendant Barbara Forest-Beriso ("Forest-Beriso") and he was using her neighboring property to conduct surveillance, take photos of and visually inspect Plaintiffs' property, employees, clients, and business operations. (*Id*. ¶ 34). Sandoval complained to Village employees, including Defendants Mike Crandall, Director of Community Development, Joesph Maranowicz, Manager, and Jeff Bly, Engineering Technician, about harassment, abuse of power, and privacy concerns stemming from O'Leary's persistent presence on or around the Property. (*Id*. ¶ 42). Additionally, Sandoval requested that another inspector be assigned to handle the Property. (*Id*.)

On December 20, 2021, Frank and Sandoval entered into a purchase agreement for the Property. (*Id*. ¶ 37). Accordingly, during the Spring of 2022, Sandoval obtained several building permits and a business license from the Village. (*Id*. ¶ 38). Plaintiffs contend that, around this time, ordinance violations were being issued to Plaintiffs on a weekly basis and Forest-Beriso began harassing New Era Trans by making false complaints and leaving negative reviews in an attempt to destroy the business' reputation. (*Id*. ¶¶ 39, 40).

Eventually, Sandoval received the necessary transfer stamps and compliance and inspection reports required to purchase the Property. (*Id*. ¶ 41). Additionally, Plaintiffs allege that, on or around June 9, 2022, Frank entered into an agreement with the Village whereby all fines would be vacated upon transfer of the Property. (*Id*.)

On January 3, 2023, the Administrative Appeals Court of DuPage County issued an order finding that the notices of violation were sufficient to find liability. (*Id.* ¶ 48). Plaintiffs, however, contend that their constitutional arguments and any facts contrary to O'Leary's contentions were not addressed. (*Id.*)

Plaintiffs initiated this § 1983 action asserting equal protection violations based on gender and national origin (Sandoval is a Latina/Hispanic minority female) and procedural due process based on interference with the ability to run the businesses, taking of her property, civil conspiracy, and other state law claims. Plaintiffs allege that, as of the date of the complaint, ordinance violations continue to be issued, the Village ignores their complaints, and O'Leary and Forest-Beriso are collaborating to monitor Plaintiffs' Property and businesses. (*Id.* ¶ 49). Defendants seek dismissal of the complaint on multiple grounds. The motions are fully briefed and ripe for ruling.

## **LEGAL STANDARDS**

Rule 12(b)(1) allows parties to challenge a pleading based on a lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction, it must proceed no further. *State of Ill. v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998). When ruling on a motion to dismiss for lack of jurisdiction, the Court must "accept all well pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Sherwood v. Marchiori*, 76 F.4th 688, 693 (7th Cir. 2023) (quoting *Prairie Rivers Network v. Dynegy Midwest Generation, LLC,* 2 F.4th 1002, 1007 (7th Cir. 2021)). In addition, the Court may consider "whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979)).

Rule 12(b)(6) permits a party to move for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In making this determination, courts must accept all non-conclusory factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must construe the complaint in the light most favorable to plaintiff and draw all reasonable inferences in plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). Applying these principles, a complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679 (2009) (citing *Twombly*, 550 U.S. at 556). To state a plausible claim for relief, a complaint must "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. The movant has the ultimate burden to show that dismissal is warranted. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## DISCUSSION

Although the Village Defendants[2] and Defendant Forest-Beriso filed separate motions to dismiss, they raise the same arguments. As a threshold matter, Defendants contend that all of Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine, the *Heck* doctrine, and the requirements of administrative exhaustion. Additionally, Defendants argue that each of Plaintiffs' claims fail as a matter of law. The Court will first address issues that affect the entire pleading and then turn to arguments directed at specific claims.

---

[2] The Village Defendants refers to Michael O'Leary, Joseph Maranowicz, Mike Crandall, Jeff Bly, and the Village of Addison.

I. **Barred Claims**

  A. ***Rooker-Feldman* Doctrine**

"Because the *Rooker-Feldman* doctrine operates as a 'jurisdictional bar,'" the Court must consider such arguments before reviewing the merits of Plaintiffs' claims. *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 764 (7th Cir. 2024) (quoting *Andrade v. City of Hammond, Ind.*, 9 F.4th 947, 948 (7th Cir. 2021)). "The *Rooker-Feldman* doctrine precludes federal courts from deciding cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Andrade*, 9 F.4th at 949 (internal quotations omitted). Sitting *en banc*, the Seventh Circuit recently issued a comprehensive opinion addressing the "limited circumstances" in which *Rooker-Feldman* applies and discussing the elements that must be considered by a district court making that determination. *See Gilbank*, 111 F.4th at 764-766. Five elements must be satisfied: (1) "the federal plaintiff must have been a state-court loser[;]" (2) "the state court judgment must have become final before the federal proceedings began[;]" (3) "the state court judgment must have caused the alleged injury underlying the federal claim[;]" (4) "the claim must invite the federal district court to review and reject the state-court judgment[;]" and (5) the plaintiff must have had "a reasonable opportunity to raise her federal issues in the state courts." *Id.* at 766.

Defendants argue that Plaintiffs' claims are barred under *Rooker-Feldman* because the documents attached to Defendants' motions,[3] including the Order entered by the Circuit Court of

---

[3] Plaintiffs object to Defendants' reliance on documents outside of the complaint. However, the Court deems it proper to consider such documents because they were referred to in the complaint and they are public records subject to judicial notice. *See Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012) ("It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider documents attached to a motion to dismiss . . . if

6

DuPage County, (Dkt. 33-4), demonstrate that Plaintiffs' claims are a "direct attack" on the state court's findings. (Village Defs.' Mem. at 13, Dkt. 33). Plaintiffs counter that *Rooker-Feldman* does not apply because (1) Plaintiffs' injuries were caused by the issuance of the ordinance violations—not the state court judgment, and (2) Plaintiffs did not have a reasonable opportunity to raise all their issues in the state court proceedings. The Court need only consider Plaintiffs' first argument, as it establishes that *Rooker-Feldman* is inapplicable.

As mentioned, "the third element of the *Rooker-Feldman* doctrine asks whether the state-court judgments caused the alleged injury underlying the claim." *Gilbank*, 111 F.4th at 766. "*Rooker-Feldman* bars claims where only the state-court judgment itself caused the alleged injury underlying the claim." *Id*. (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005)). "On the other hand, claims based on injuries that are 'independent' of the state-court judgment (i.e., injuries that were not caused by that judgment) are not barred." *Gilbank*, 111 F.4th at 766 (citing *Exxon Mobil*, 544 U.S. at 293)). "Where, for example, an injury was complete before the state-court judgment was rendered, the judgment could not have caused the injury, so a claim based on that injury is independent." *Gilbank*, 111 F.4th at 767 (citing *Andrade*, 9 F.4th at 948, 950-51)).

*Andrade* is instructive. There, the plaintiff was issued notices stating that an apartment building he owned was unsafe and in violation of Indiana law. *Andrade*, 9 F.4th at 949. Following a hearing, the Board of Public Works and Safety found that the building was unsafe and ordered the plaintiff to make repairs. *Id*. The plaintiff sought review of the Board's decision in state court. *Id*. After exhausting the state court appellate process, the plaintiff filed a complaint in federal court,

---

they are referred to in the plaintiff's complaint and are central to his claim.") (internal quotations omitted); *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) ("It's well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss.").

alleging that defendants violated and conspired to violate his due process rights when making administrative determinations regarding his property. *Id*. Defendants moved to dismiss, arguing that the plaintiff's claims were barred by *Rooker-Feldman*. *Id*. The Seventh Circuit disagreed and found that "[a]lthough the administrative determination was later affirmed by Indiana courts, [plaintiff's] claims concern[ed] [d]efendants' actions separate from any state-court judgment." *Id*. at 948.

The same logic applies here. While some of the ordinance violations Plaintiffs complain about were upheld by the Circuit Court of DuPage County, Plaintiffs' claims are separate from any state-court judgment. The gist of their complaint is that Defendants issued ordinance violations for discriminatory reasons, failed to provide due process, took their property, and engaged in a civil conspiracy, amongst other things. It is clear from the factual circumstances that Plaintiffs' alleged injuries arose prior to the state court proceedings. As such, the state court judgment could not have caused the injuries about which Plaintiffs now complain. The *Rooker-Feldman* doctrine therefore does not serve as a bar to Plaintiffs' claims.

    **B. *Heck* Doctrine**

Defendants also argue that the *Heck* doctrine bars Plaintiffs' claims. In *Heck v. Humphrey*, 512 U.S. 477, 486 (1994), the Supreme Court "held that a district court must dismiss a § 1983 action if a judgment in favor of the plaintiff in that § 1983 action would necessarily imply the invalidity of his criminal conviction or sentence." "Put another way, *Heck* bars a plaintiff from advancing a claim that is 'incompatible with his conviction.'" *Stone v. Vill. of Broadview*, No. 13 C 9316, 2014 WL 3397222, at *3 (N.D. Ill. July 11, 2014) (citing *Gilbert v. Cook,* 512 F.3d 899, 902 (7th Cir. 2008)). "In considering whether *Heck* requires dismissal, courts 'must consider the

factual basis of the claim and determine whether it necessarily implies the invalidity of [Plaintiff's] conviction.'" *Stone*, 2014 WL 3397222, at *3 (quoting *Gilbert,* 512 F.3d at 902).

The Seventh Circuit has reserved judgment on whether *Heck* applies to an administrative proceeding or a finding of a violation of a city ordinance. *See Kuhn v. Goodlow*, 678 F.3d 552, 555 (7th Cir. 2012); *Justice v. Town of Cicero,* 577 F.3d 768, 773 (7th Cir.2009). However, courts in this district have held that *Heck* applies to claims that would imply the invalidity of municipal ordinance convictions. *See Stone*, 2014 WL 3397222, at *4; *Vandenburgh v. Bannockburn Police Officer Robert Ogden*, No. 15 C 6191, 2016 WL 403663, at *6 (N.D. Ill. Feb. 3, 2016). Notably, *Kuhn* did not determine whether *Heck* applied because the record was unclear as to the type of judicial proceeding in which the plaintiff took part. 678 F.3d at 555. Likewise, *Justice* declined to decide if *Heck* applied where it was unclear from the record exactly what convictions or sentences the plaintiff received. 577 F.3d at 773.

The record in this case suffers from similar deficiencies. While Defendants have provided a copy of the Circuit Court's decision, the opinion is devoid of critical details. For example, the state trial court found that "the hearing officer's decision finding plaintiff liable for the violations at issue and imposing the corresponding fines was neither clearly erroneous nor against the manifest weight of the evidence." But the decision does not indicate what the "violations at issue" are[4] or the amount of the fines that were imposed against Plaintiffs. Moreover, the scope of judicial proceedings in the Circuit Court is not clear, including whether Plaintiffs had an opportunity to cross-examine any witnesses. At this stage, because the Court is unable to say for certain that *Heck* applies here, dismissal on that basis would be improper.

---

[4] Exhibit A to the Village Defendants' motion to dismiss lists the outstanding property code violations; however, it is unclear whether those were the violations at issue in the Circuit Court proceedings. (*See* Dkt. 33-1).

### C. Administrative Exhaustion

The doctrine of exhaustion provides that a party aggrieved by an administrative decision ordinarily cannot seek judicial review without first pursuing all available administrative remedies. *Pinkston v. City of Chi.*, 2023 IL 128575, ¶ 24. Here, Defendants argue that Plaintiffs are barred from challenging the ordinance violations that they did not administratively exhaust. While the Court generally agrees with that statement, again, it is not clear from the record which violations were administratively exhausted and which were not. Indeed, Defendants concede that Plaintiffs administratively exhausted "one set" of citations. (Village Defs.' Mot. at 15). But neither the complaint nor Defendants' motions or supporting attachments clearly identify the exact ordinance violations to which that statement applies. Because Defendants have not met their burden on this issue, the Court declines to dismiss the complaint on that ground.

## II. Merits

### A. Equal Protection

Counts I and II of Plaintiffs' Complaint assert equal protection claims against the Village Defendants. "The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'" *Reget v. City of La Crosse,* 595 F.3d 691, 695 (7th Cir. 2010)). In both their complaint and opposition brief, Plaintiffs conflate the protected class and class-of-one theories. For example, in the section of their response entitled, "Plaintiffs' Class of One Equal Protection Claim Should Stand[,]" Plaintiffs argue that "Sandoval

identifies the discrimination against her as national origin and gender." Thus, the Court considers whether Plaintiffs have adequately alleged a claim under either theory.

Defendants argue that Plaintiffs' race/gender and class-of-one equal protection claims fail for two main reasons. First, they contend that Plaintiffs' allegation that similarly situated residents were treated more favorably is implausible. "To state a suspect class or class-of-one equal protection claim, a plaintiff must allege that a state actor intentionally treated him differently than others similarly situated." *Glenwood Halsted LLC v. Vill. of Glenwood*, 866 F. Supp. 2d 942, 947 (N.D. Ill. 2012) (citing *Harvey v. Town of Merrillville,* 649 F.3d 526, 531 (7th Cir. 2011), *LaBella Winnetka, Inc. v. Vill. of Winnetka,* 628 F.3d 937, 942 (7th Cir. 2010)). To be similarly situated, a plaintiff and his comparators must be identical or directly comparable in all material respects. *Glenwood Halsted LLC*, 866 F. Supp. 2d at 947 (citing *Harvey,* 649 F.3d at 531). Dismissal at the pleading stage is appropriate where the pleadings demonstrate that plaintiff and the comparators are different in material respects. *Glenwood Halsted LLC*, 866 F. Supp. 2d at 947 (citing *Harvey*, 649 F.3d at 531).

In support of their claims, Plaintiffs point out that the previous owners of the Property, who were Caucasian males, as well as other tenants on the Property did not receive any citations or ordinance violations. In response, Defendants assert this argument is unavailing because Plaintiffs have not alleged the other owners and tenants committed the same infractions. The Court is not convinced. Drawing all inferences in Plaintiffs' favor as the Court must at this stage of the case, it is reasonable to conclude that at least the previous owners of the Property committed the same ordinance violations as Plaintiffs have alleged that many of the cited violations were present before she purchased the Property. (*See*, e.g., Compl. ¶ 18 (listing items that needed to be repaired

pursuant to pre-annexation agreement). Thus, the Court finds that Plaintiffs have adequately alleged they were treated different than similarly situated individuals.

Second, Defendants argue that Plaintiffs claims fail because there was a rational basis for each of the violations that were issued to Plaintiffs, namely Plaintiffs' failure to abide by the Village's local ordinances. "For an equal-protection claim based on class membership to survive a motion to dismiss, a plaintiff must sufficiently allege that they were treated differently by the government based on membership in a protected class, and that the defendant acted with discriminatory intent." *Doe v. Bd. of Educ. of City of Chi.*, 611 F. Supp. 3d 516, 532 (N.D. Ill. 2020) (citing *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000)). Likewise, to establish a successful class-of-one equal protection claim, Plaintiffs must show that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*.

It is not enough for a complaint to suggest an improper motive, for a given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity. *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015)*.* "Thus, even at the pleadings stage, all it takes to defeat a class-of-one claim is a *conceivable* rational basis for the difference in treatment." *Id*. (internal quotations omitted). "For that reason, it is possible for plaintiffs to plead themselves out of court if their complaint reveals a potential rational basis for the actions of local officials." *Id*. "Put differently, if the Court can come up with a rational basis for the challenged action, that will be the end of the matter." *Id*.

Here, there is a rational basis for the challenged actions. The Circuit Court of DuPage County has already determined, as a matter of law, that "there is ample evidence in the record supporting the hearing officer's decision that plaintiff's business was in violation of at least five

separate sections of the Village of Addison's Village Code." Plaintiffs' failure to abide by the Village code is a rational basis for issuing ordinance violations. (Ex. D, Dkt. 33-4). Plaintiffs do not offer any factual allegations in the complaint to explain how or why the violations were irrational or unfounded. Merely pointing out that Plaintiffs received violations and others did not is simply not enough to satisfy the pleading requirements of *Iqbal* and *Twombly*. Accordingly, Plaintiffs' equal protection claim fails.

B. **Procedural Due Process**

"The Due Process Clause of the Fourteenth Amendment allows Section 1983 claims against the State or its employees for violations of . . . procedural due process rights." *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, No. 92 C 6659, 1997 WL 367368, at *3 (N.D. Ill. June 25, 1997) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). To plead a procedural due process violation, Plaintiffs must allege (1) a cognizable property interest, (2) a deprivation of that interest, and (3) a denial of due process. *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010). In Count III, Plaintiffs assert a procedural due process claim against the Village Defendants based on their alleged "interference with Plaintiffs ability to run her Businesses and engage in ordinary business operations without constant monitoring, inspecting and surveillance by Defendant O'Leary[.]" (Compl. ¶ 65). Defendants contend that Plaintiffs have not adequately alleged a protectable interest. In response, Plaintiffs point to their protected interest in ownership of the Property and assert that the state did not provide adequate post-deprivation remedies because, even when raised, Plaintiffs' constitutional claims were not addressed by the state court.

As an initial matter, it is not clear exactly what Plaintiffs are seeking redress for here. Both the complaint and their response brief suggest that they are challenging the fact that citations were issued by Defendants and the administrative and state court proceedings. Even so, Plaintiffs

13

eventually received several permits and a business license (Compl. ¶ 38), which begs the question of whether any non-discretionary benefit was denied that would trigger a requirement of process. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005).

Plaintiffs also suggest in their response brief that their substantive due process rights may be at issue here, as they contend the ordinance violations were unreasonably applied to them. That, however, sounds like the equal protection claim which the Court found, *infra*, is not adequately stated in the complaint. Or perhaps Plaintiffs are alleging a taking which the Court finds *supra*, is also not viable. Regardless, these complaint allegations are insufficient to identify a protectable interest, let alone denied process. As a result, the due process claim fails.

C. **Taking**

In Count IV, Plaintiffs assert a violation of the Takings Clause of the Fifth Amendment of the United States Constitution against the Village Defendants. "[A] government violates the Takings Clause when it takes property without compensation, and . . . a property owner may bring a Fifth Amendment claim under § 1983 at that time." *Knick v. Twp. of Scott, Pa.*, 588 U.S. 180, 202 (2019). "To state a claim for a violation of the Takings Clause, a plaintiff must allege (1) that the governmental entity took her property, either through a physical taking or through unduly onerous regulations; (2) that the taking was for a public use; and (3) that, no matter what type of property (real or personal) was taken, the government has not paid just compensation." *Lacy v. City of Chi.*, No. 21 C 06783, 2024 WL 1376211, at *6 (N.D. Ill. Mar. 31, 2024) (citing *Conyers v. City of Chi.*, 10 F.4th 704, 710-11 (7th Cir. 2021)) (internal quotations and alterations omitted). The Supreme Court has long recognized that "'while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.'" *Mogan v. City of Chi.*, 115 F.4th 841, 847 (7th Cir. 2024), *reh'g denied*, No. 22-2801, 2024 WL 4534752 (7th Cir. Oct. 21, 2024).

Accordingly, subject to certain exceptions, "a regulation which denies all economically beneficial or productive use of land will require compensation under the Takings Clause." *Id.*

Plaintiffs assert that they have been deprived from all economically beneficial use of the Property based on O'Leary's "inference and arbitrary citations" and other Village Defendants' failure to address O'Leary's actions. (Compl. ¶ 64). At most, Plaintiffs point to the fact that Sandoval has applied for permits to cure the existing defects which have been rejected. Nevertheless, the complaint does not come close to pleading a total taking. *See Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1045 (N.D. Ill. 2018) (dismissing taking claim based on plaintiff's failure to allege that the property cannot be used for any purpose). It states only that "fees adding up to thousands of dollars" have been assessed against the property. That conclusory statement fails to establish that Plaintiffs are "unable to use the property for *any* economically beneficial purpose." Plaintiffs must set forth specific facts to demonstrate a plausible claim. Thus, the takings claim fails.

### D. Civil Conspiracy

In Count V, Plaintiffs allege a civil conspiracy claim against the Village Defendants and Forest-Beriso. "A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). "To establish conspiracy liability in a § 1983 claim, the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Id*. Here, Plaintiffs allege that Defendants engaged in a conspiracy to issue numerous code citations, "in error." (Compl. ¶ 71-72). However, Plaintiffs cannot maintain a conspiracy claim when all of their underlying constitutional violations have been dismissed. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008)

("[C]onspiracy is not an independent basis of liability in § 1983 actions."); *Hicks v. City of Chicago*, No. 15 C 6852, 2017 WL 4339828, at *7 (N.D. Ill. Sep. 29, 2017) ("In other words, there is no such thing as a stand-alone claim for 'conspiracy'—there must be an underlying constitutional violation.") (citation omitted). Thus, Plaintiffs' conspiracy claim must be dismissed.

### III. State Law Claims (Counts VI - X)

Plaintiffs raise a variety of state law claims, including indemnification and respondent superior. Given that Plaintiffs are being granted leave to file an amended complaint, the Court declines to determine if the state law claims should be dismissed without prejudice to renewal in an appropriate forum. *See Schmalz v. Vill. of N. Riverside,* No. 21 C 1684, 2023 WL 2752731, at *4 (N.D. Ill. Mar. 31, 2023) ("Given the authorization to file an amended complaint, there is no reason to address whether relinquishment would be proper if the federal claim is dismissed[.]"); *Anchorbank v. Hofer*, No. 09 C 610, 2010 WL 842172, at *8 (W.D. Wis. Mar. 5, 2010) ("It would be improvident to determine the fate of plaintiffs' state law claims before determining the fate of their federal claims."). Thus, the Court will defer ruling until the viability of Plaintiffs' federal claims is resolved.

### CONCLUSION

For all the foregoing reasons, Defendants' motions to dismiss are granted. Plaintiffs are granted leave to file an amended complaint consistent with the Court's opinion by 2/12/25. Otherwise, the federal claims will be dismissed with prejudice and this case closed.

**DATED**: January 21, 2025        **ENTERED**:

*LaShonda A. Hunt*

LASHONDA A. HUNT
United States District Judge

16